IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE CONSTAR INT'L INC. SECURITIES LITIGATION, ) ) ) This Document Relates To: ) ) ALL ACTIONS. ) ) | Master File No. 03cv05020<br><br>**CLASS ACTION** |

MEMORANDUM OF LAW IN SUPPORT OF
UNDERWRITER DEFENDANTS' MOTION TO DISMISS
THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT


Dated: September 23, 2004

Marc J. Sonnenfeld, MS1107
(I.D. No. 17210)
Karen Pieslak Pohlmann
(I.D. No. 60079)
Jill Baisinger
(I.D. No. 82476)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: 215.963.5000
Facsimile: 215.963.5001

Attorneys for Defendants Salomon Smith Barney, Inc., d/b/a Citigroup Global Markets Inc., Citigroup, Deutsche Bank Securities Inc., J.P. Morgan Securities, Inc., and Lazard Freres & Co., L.L.C.

## I.    **INTRODUCTION**

Defendants Salomon Smith Barney, Inc., d/b/a Citigroup Global Markets Inc. ("Salomon"), Citigroup,[1] Deutsche Bank Securities Inc. ("Deutsche Bank"), J.P. Morgan Securities, Inc. ("J.P. Morgan"), and Lazard Freres & Co., L.L.C. ("Lazard") (collectively, the "Underwriter Defendants") hereby move to dismiss the Consolidated Amended Class Action Complaint ("Complaint") for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Complaint names numerous defendants (including Constar International, Inc. ("Constar"), Constar's former parent Crown Holdings, Inc. ("Crown"), eight Constar officers and directors, and the Underwriter Defendants) but does not contain a single factual allegation suggesting any improper conduct on the part of the Underwriter Defendants.

As set forth more fully in the motion to dismiss and accompanying memorandum of law filed by the other Defendants in this matter [hereinafter, "Constar's Motion" or "Constar's Memorandum"], the Complaint purports to assert claims under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, on account of alleged misstatements and omissions in the registration statement published in connection with Constar's 2002 initial public offering ("IPO"). Those claims must be rejected as a matter of law because (1) taking the registration statement as a whole,[2] it is plain that none of the alleged misrepresentations was in fact false or misleading, and (2) in any event, the Plaintiffs have alleged no facts to show that those statements were material.

---

[1]    Salomon is a subsidiary of defendant Citigroup. Compl. ¶ 45. The Complaint does not allege that Citigroup played a direct role in the IPO; rather, Citigroup is named because it is the 100% owner of Salomon and, thus it purportedly was "able to control, and did control" Salomon. Id. ¶ 46.

[2]    This Court may consider the contents of the registration statement on a motion to dismiss, as it is cited in and relied upon by the Complaint. See, e.g., In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1331 (3d Cir. 2002); see also, e.g., In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (considering entire prospectus).

## II. BACKGROUND AND RELEVANT FACTUAL ALLEGATIONS

In early 2002, defendant Crown began efforts to spin-off its wholly-owned subsidiary, Constar, in an IPO. Compl. ¶ 21. Constar manufactures both conventional and custom polyethylene terephthalate ("PET") plastic containers for food and beverages. Id. ¶ 6. Salomon, Deutsche Bank, and J.P. Morgan served as co-lead underwriters for the IPO. Compl. ¶¶ 44-49. As the registration statement acknowledges, because the co-lead underwriters each had involvement as "lenders under Crown's senior secured credit facility, and will receive more than 10% of the net proceeds of this offering when Crown repays that facility," Lazard was designated as a "qualified independent underwriter" under NASD rules. Registration Statement at 107-08 (attached as Ex. A to Constar's Motion to Dismiss). See also Compl. ¶ 49 (Lazard acted as the "qualified independent underwriter.") The registration statement also identified other pre-existing relationships between the Underwriter Defendants and Constar. Id. at 108. Constar completed the IPO in November 2002 and issued 10.5 million shares of common stock pursuant to a registration statement. Compl. ¶¶ 1, 24, 150.

Tellingly, the Complaint fails to allege a single fact to support the proposition that the Underwriter Defendants did anything wrong. Other than allegations that J.P. Morgan and Deutsche Bank had a "financial motive" to market the IPO because of their loans to Crown, Constar's parent, Compl. ¶¶ 78-80 — information that was explicitly disclosed in the registration statement at 107-08 — there are no specific allegations pertaining to the Underwriter Defendants.[3] Rather, the Complaint alleges simply that the Underwriter Defendants must have been aware of the purported misstatements because of their due diligence activities (which are

---

[3] There is no allegation that J.P. Morgan or Deutsche Bank knew or should have known of the alleged misstatements by Constar because of their loans to Crown. Nor are there any alleged improprieties in their actions as lenders.

not described). See, e.g., id. ¶¶ 51-53.[4] None of the confidential witnesses whose statements are used to substantiate the supposed misrepresentations claim that they had any contact with the Underwriter Defendants, much less that the Underwriter Defendants were aware of or had any reason to be aware of any of the specific details raised by these sources.

## III. ARGUMENT

The registration statement that is at the center of this litigation disclosed extensive, detailed, and accurate information regarding Constar's financial situation, its relationship to Crown, and its substantial debt, as well as the strategic and operating approach it has used and planned to follow after the IPO. Accordingly, the purported "misstatements" were not false and misleading, and they were not material. In fact, the great majority of the allegations in the Complaint describe only potential challenges to the manner in which Constar's operations were being managed, which are not actionable under the federal securities laws.

### A. Incorporation By Reference

The Plaintiffs contend that the registration statement was materially false and misleading and that, accordingly, Constar's common stock price was artificially inflated. See, e.g., Compl. ¶ 1. In making these allegations, Plaintiffs raise five broad categories of challenges, including:

(1) **Constar's general position:** Plaintiffs contend that Constar's general competitive and financial position was misstated (including its relationship with

---

[4] To the extent that the Plaintiffs' allegations regarding motive as to J.P. Morgan and Deutsche Bank, Compl. ¶¶ 78-80, in combination with more generalized statements regarding the purported knowledge of all of the Underwriter Defendants, id. ¶¶ 51-53, may be read to plead fraud, they (as the other allegations of the Complaint) fall far short of the particularity requirements of Federal Rule of Civil Procedure 9(b). For example, the allegations in paragraphs 51, 52, and 53 offer no supporting details as to why these defendants had the knowledge that is ascribed to them. See, e.g., Shapiro v. UJB Fin. Corp., 964 F.2d 272, 284-85, 287-89 (3d Cir. 1992). The Court, however, need not resolve this issue, as the failure to plead the existence of actionable misrepresentations and materiality alone requires dismissal of the Complaint.

3

      Crown), and in fact, Constar could not effectively compete in the PET container market for a variety of reasons, including its heavy debt burden. <u>See, e.g.</u>, Compl. ¶¶ 3(a), 3(c), 21-23, 151, 153, 156.

(2)     **Capital expenditures and capacity expansion**: Plaintiffs contend that the registration statement failed to acknowledge the difficulties Constar would face in making necessary capital expenditures and capacity expansion. <u>See, e.g.</u>, <u>id.</u> ¶¶ 154, 158, 160-64, 166.

(3)     **Manufacturing problems and technology**: Plaintiffs contend that the registration statement failed to describe accurately flaws in Constar's proprietary technology as well as manufacturing problems that led to the loss of some customers. <u>See, e.g.</u>, <u>id.</u> ¶¶ 151, 153, 156, 169, 171.

(4)     **Pricing fluctuations for resin**: Plaintiffs contend that pricing fluctuations for resin, the petroleum product that was Constar's most significant raw material, would detrimentally affect Constar's sales and profitability. <u>See, e.g.</u>, <u>id.</u> ¶¶ 173, 177, 180, 182.

(5)     **Goodwill**: Plaintiffs contend that Constar's goodwill was overstated. <u>See, e.g.</u>, <u>id.</u> ¶¶ 3(d), 71-73.

In making these allegations, Plaintiffs rely heavily on the statements of sixteen confidential witnesses ("CWs"), who range from a forklift operator at one of Constar's fourteen plants, Compl. ¶ 140; <u>see also</u> Registration Statement at 50, to an individual who left Constar's employment nearly a decade before the IPO. Compl. ¶ 84.

Rather than burden this Court with duplicative filings, the Underwriter Defendants explicitly incorporate into this Motion the legal arguments made in Constar's Motion and Memorandum. Each of the arguments made in those filings applies to the Underwriter Defendants to the same degree that it does to Constar and to the other defendants.

While the Underwriter Defendants join in each of the legal arguments made in Constar's Motion and Memorandum, the Underwriter Defendants emphasize that the following reasons alone establish that none of the purported misrepresentations were misleading when the registration statement is read as a whole, nor material:

4

(1) **With respect to Constar's general position**, information regarding Constar's general financial status, its relationship with Crown, and the nature of the IPO—in particular, the fact that Constar would receive no proceeds from the IPO—was explicitly discussed throughout the registration statement. See, e.g., Registration Statement at 9, 19, 22, 25, 39, 40-44, 88.

(2) **With respect to capital expenditures and capacity expansion**, Constar's registration statement described the state of Constar's capital expenditures and capacity. It repeatedly explained that Constar had not required substantial capital expenditures over the last several years and disclosed that its machinery was already operating at full capacity. See, e.g., id. at 46, 53-54, 58. Constar also stated numerous times that, because of the need to devote entire facilities to single product lines, it would engage in capital expenditures, expansion, and upgrading only if "profitable growth can be supported by appropriate contractual terms with our customers." Id. at 53; see also id. at 35, 54.

(3) **With respect to purported manufacturing problems and technology**, the registration statement also disclosed that the market was extremely competitive and that Constar did not have the resources or the technology that some of its competitors did. See, e.g., id. at 12-13, 35, 53-54.

(4) **With respect to pricing fluctuations for resin**, Constar disclosed both that resin prices had a significant effect on its profitability and that such increased prices might lead to an overall market shift away from PET products. See, e.g., id. at 13, 35.

(5) **With respect to goodwill**, the goodwill announcement with which Plaintiffs take issue was not made until August 2003, and Plaintiffs plead no facts establishing that a write-down of goodwill was required at the time of the IPO. This is particularly true given that the goodwill write-down was caused in part by factors such as the price at which Constar's stock traded, summer weather, and handling costs, factors that did not occur until months after the IPO. Compl. ¶ 203.

In addition, Plaintiffs purport to rely on sixteen confidential sources to support the Complaint's attempt to plead a material misstatement. Eight of the sixteen CWs were not employed at Constar at the time of the IPO. Compl. ¶¶ 71, 72, 82, 84, 86,[5] 92, 96, 127. Of the remaining eight individuals, only one had a position that could plausibly have permitted access

---

5/  With respect to CW6, the Complaint states only that he left Constar in 2002. This source provides no information beyond the early part of 2002, Compl. ¶¶ 86, 142, and Plaintiffs have not pled that CW6 was employed at Constar at the time of the IPO.

to information beyond that applicable to a single plant. Id. ¶ 105 (describing CW11, a sales manager); cf. id. ¶¶ 85, 94, 100, 111, 115, 136, 140 (describing other confidential witnesses whose positions limited their knowledge to activities at particular plants). In other words, the confidential witnesses do not offer any information applicable to Constar's operations as a whole at the time of the IPO, and they do not explain how issues at one plant would necessarily affect other plants in the same way. Nor do any of the confidential witnesses quantify the significance of their criticisms, again undercutting the Plaintiffs' contentions that these sources provide proof of material misstatements.

Indeed, even if Plaintiffs had alleged any misrepresentation, notably absent from the Complaint are any allegations that would allow the court to quantify or otherwise measure the effect of these alleged misstatements on Constar as "material." To the contrary, nothing in the Complaint provides any factual basis to conclude that any of the alleged misrepresentations, such as the purported loss of a customer or the supposed failure to upgrade a piece of equipment, was significant on a company-wide level.

**B.   At Most, The Plaintiffs' Allegations Describe Only Non-Actionable Mismanagement**

In addition to the arguments articulated by Constar in its Motion and Memorandum, the Underwriter Defendants stress that, as to many allegations, the Complaint alleges merely mismanagement or internal disagreement regarding strategy, rather than a material misstatement or omission sufficient to impose liability under Section 11. See, e.g., Compl. ¶¶ 65-66, 81-121, 127-34, 144-45, 147-48. As a matter of well-settled law, such mismanagement is not actionable, and "[w]here the incremental value of disclosure is solely to place potential investors on notice that management is culpable of a breach of faith or incompetence, the failure to disclose does not

violate the securities acts." In re Craftmatic Sec. Litig., 890 F.2d 628, 640 (3d Cir. 1990); see also id. at 638 n.14 (applying this analysis to section 11 claims).

Even crediting the allegations attributed to the confidential witnesses, most, if not all, of their claims raise nothing more than non-actionable disagreements regarding the most appropriate way to manage Constar's business. These include:

- Contentions that Constar failed to upgrade facilities, including allegations that Constar failed to upgrade facilities to obtain contracts with specific customers. See, e.g., Compl. ¶¶ 81-90, 112-14, 116, 127-29, 134. Particularly given that the registration statement explains that Constar would engage in capital expansion only if beneficial long-term contracts could be reached, Registration Statement at 53-54, such allegations show only that the confidential source disagreed with Constar's decisions, not that the registration statement itself was false or misleading.

- Contentions that Constar acted improperly in failing to retain or obtain particular customers. See, e.g., Compl. ¶¶ 91-121, 130-34. None of the confidential witnesses (or the Complaint as a whole) provides any assessment of the significance of the lost customers or the degree to which the loss of these customers may have been offset by other new customers or new orders for existing customers.

- Contentions that Constar made a "shift in business strategy" and failed to bid on particular contracts. See, e.g., Compl. ¶¶ 66, 96-99, 129. Again, such decisions were consistent with the information disclosed in the registration statement and identify only disagreements with Constar's business strategy. Registration Statement at 53-54, 58 (noting that entire product lines must be devoted to single customers and accordingly, that particular contractual terms would be required before doing so).

- Contentions regarding Constar's overall strategy with respect to hiring and personnel. Compl. ¶¶ 65, 113.

- Decisions regarding particular prices and rebate approaches and whether to accept particular customers' sales forecasts. Compl. ¶ 131-33, 144-45, 147-48.

While individual Constar employees (as well as Constar competitors, such as CW2, id. ¶ 72) might have made different decisions regarding such issues, the decision to pursue an alternative business strategy cannot be the basis of a Section 11 claim. Accordingly, the allegations that reveal only differences in management approach should be dismissed as failing to identify material misstatements.

7

## IV. CONCLUSION

In the end, notwithstanding the length of the Complaint, it fails to plead facts that establish either the existence of misstatements or omissions at the time of the IPO or the materiality of the purported misstatements or omissions. There is still less information regarding the purported involvement of the Underwriter Defendants. For all the foregoing reasons, as well as the reasons articulated in Constar's Motion and accompanying Memorandum, the Underwriter Defendants respectfully request that this Court dismiss the Complaint.

Respectfully submitted,

Dated: September 23, 2004

Marc J. Sonnenfeld, MS1107
(I.D. No. 17210)
Karen Pieslak Pohlmann
(I.D. No. 60079)
Jill Baisinger
(I.D. No. 82476)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: 215.963.5000
Facsimile: 215.963.5001

Attorneys for Defendants Salomon Smith Barney, Inc., d/b/a Citigroup Global Markets Inc., Citigroup, Deutsche Bank Securities Inc., J.P. Morgan Securities, Inc., and Lazard Freres & Co., L.L.C.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 23, 2004, a true copy of the foregoing Memorandum of Law was served on the following counsel by the methods indicated:

### BY HAND DELIVERY:

**LAW OFFICES OF BERNARD M. GROSS, P.C.**
Deborah R. Gross
1515 Locust Street, Second Floor
Philadelphia, PA 19102
Telephone: (215) 561-3600

**Liaison Counsel for Lead Plaintiffs and the Class**

### BY OVERNIGHT MAIL POSTAGE PREPAID:

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
Sandy A. Liebhard
Jeffrey M. Haber
Timothy J. MacFall
Stephanie M. Beige
10 East 40th Street, 22nd Floor
New York, NY 10016
Telephone: (212) 779-1414

**LERACH COUGHLIN STOIA & ROBINSON LLP**
Steven W. Pepich
Brian O. O'Mara
401 B Street, Suite 1700
San Diego, California 92101
Telephone: (619) 231-1058

**Attorneys for Plaintiffs**

**BY HAND DELIVERY**:

    **DECHERT LLP**
    Michael L. Kichline
    4000 Bell Atlantic Tower
    1717 Arch Street
    Philadelphia, PA 19103-2793
    Telephone: (215)994-2439

    **Attorney for Constar International Inc., Crown Holdings, Inc., and the Individual Defendants**

                                        */s/ Jill Baisinger*
                                        Jill Baisinger, JMB2230

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE CONSTAR INT'L INC. SECURITIES LITIGATION, | ) ) ) | Master File No. 03cv05020 |
| This Document Relates To: | ) ) ) | CLASS ACTION |
| ALL ACTIONS. | ) ) ) | |

## PROPOSED ORDER

**AND NOW**, upon consideration of the Underwriter Defendants' Motion To Dismiss The Consolidated Amended Class Action Complaint, and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. The Complaint is **DISMISSED** with prejudice as to Salomon Smith Barney, Inc., d/b/a/ Citigroup Global Markets Inc., Citigroup, Deutsche Bank Securities Inc., J.P. Morgan Securities, Inc., and Lazard Freres & Co., L.L.C.

_____
Ludwig, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE CONSTAR INT'L INC. SECURITIES LITIGATION,<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Master File No. 03cv05020<br><br>CLASS ACTION |

## UNDERWRITER DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Defendants Salomon Smith Barney, Inc., d/b/a/ Citigroup Global Markets Inc., Citigroup, Deutsche Bank Securities Inc., J.P. Morgan Securities, Inc., and Lazard Freres & Co., L.L.C. hereby move pursuant to Federal Rule of Civil Procedure 12(b)(6) for the entry of an Order dismissing the Amended Consolidated Complaint with prejudice. In support thereof, the Underwriter Defendants submit the accompanying Memorandum of Law, which is incorporated herein by reference. The Underwriter Defendants respectfully request oral argument on this Motion pursuant to Local Rule of Civil Procedure 7.1.

Dated: September 23, 2004

Marc J. Sonnenfeld, MS1107
(I.D. No. 17210)
Karen Pieslak Pohlmann
(I.D. No. 60079)
Jill Baisinger
(I.D. No. 82476)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: 215.963.5000
Facsimile: 215.963.5001

Attorneys for Defendants Salomon Smith Barney, Inc., d/b/a Citigroup Global Markets Inc., Citigroup, Deutsche Bank Securities Inc., J.P. Morgan Securities, Inc., and Lazard Freres & Co., L.L.C.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 23, 2004, a true copy of the foregoing Underwriter Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint was served on the following counsel by the methods indicated:

### BY HAND DELIVERY:

**LAW OFFICES OF BERNARD M. GROSS, P.C.**
Deborah R. Gross
1515 Locust Street, Second Floor
Philadelphia, PA 19102
Telephone: 215-561-3600

**Liaison Counsel for Lead Plaintiffs
and the Class**

### BY OVERNIGHT MAIL POSTAGE PREPAID:

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
Sandy A. Liebhard
Jeffrey M. Haber
Timothy J. MacFall
Stephanie M. Beige
10 East 40th Street, 22nd Floor
New York, NY 10016
Telephone: 212-779-1414

**LERACH COUGHLIN STOIA & ROBINSON LLP**
Steven W. Pepich
Brian O. O'Mara
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619-231-1058

**Attorneys for Plaintiffs**

**BY HAND DELIVERY**:

>**DECHERT LLP**
>Michael L. Kichline
>4000 Bell Atlantic Tower
>1717 Arch Street
>Philadelphia, PA 19103-2793
>Telephone: 215-994-2439
>
>**Attorney for Constar International Inc.,
>Crown Holdings, Inc., and
>the Individual Defendants**

_Jill Baisinger_
Jill Baisinger, JMB2230