IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re CONSTAR INTERNATIONAL INC.   :      Master File No. 03-5020
SECURITIES LITIGATION          :
                               :
This Document Relates To:       :
ALL ACTIONS                :      Class Action

## REPORT AND PROPOSED ORDER

**DIANE M. WELSH**                               **May 7, 2007**
**SPECIAL MASTER**

       Lead plaintiffs, Ameesh Bhandari and Randolph Redstone ("lead plaintiffs" or "proposed

class representatives"), bring this proposed securities class action, on behalf of themselves and

others similarly situated (collectively "plaintiffs" or "the Class"), alleging violations of Sections

11 and 15 of the Securities Act of 1933 ("1933 Act" or "Securities Act"), 15 U.S.C. §§ 77k and

77O.[1]

       Lead plaintiffs have filed a Motion for Class Certification requesting an Order: (1)

certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and

23(b)(3); (2) certifying lead plaintiffs as the representatives of the proposed class; (3) appointing

the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") as

lead class counsel, and the Law Offices of Bernard M.

Gross, P.C. (Deborah R. Gross, Esq.) as liaison class counsel; and (4) granting such other and

further relief as the Court may deem just and proper.  The motion seeks class certification of a

plaintiff class consisting of:

              All purchasers of the securities of Constar International, Inc.
              ("Constar" or "the Company") issued pursuant to or traceable to

> the Company's Registration Statement/ Prospectus (the
> "Registration Statement") for Constar's November 14, 2002 initial
> public offering ("IPO" or the "Offering"), seeking to pursue
> remedies under the Securities Act of 1933 (the "Securities Act").[2]

See Pls.' Br. at 1 (footnote in original).

Plaintiffs seek to recover damages resulting from their purchases of Constar stock which plaintiffs allege was marketed and sold to the investing public at an inflated price by means of a materially false and misleading Registration Statement.[3]  Id.  In support of their motion, they argue that the proposed class satisfies the requirements for class certification as set forth in Rules 23(a) and 23(b)(3), that lead plaintiffs will fairly and adequately protect the interest of the members of the proposed class, and that lead plaintiffs' chosen counsel satisfies the requirements of Rule 23(g)(1) of the Federal Rules of Civil Procedure and is qualified to represent the proposed class.

In opposition to the motion, defendants contend that lead plaintiffs have disabling defects that prevent them from proving that they will fairly and adequately protect the interests of the absent class members they seek to represent.[4]  Furthermore, defendants argue that class certification should be precluded in that (1) lead plaintiffs lack standing to pursue their § 11 claims, and (2) plaintiffs do not allege an efficient market here.  See Defs.' Resp. at 1.

## 1.   BACKGROUND

Lead plaintiffs allege that Crown purchased Constar, a manufacturer of conventional and custom polyethylene terephthalate ("PET") containers for the food and beverage industries, in 1992.  Although Constar was a successful, profitable company at that time, lead plaintiffs allege that Crown was unable to continue to grow Constar's business, and as a result of Crown's own

increasing financial problems, Constar's business suffered.

According to lead plaintiffs, by the end of 2001, Crown had a net loss of almost $1 billion, and to solve its cash crisis, Crown began selling "non-core" assets, one of which was Constar.  Lead plaintiffs further allege that Crown, unable to sell Constar to its competitors, decided to "spin-off" the Company in a public offering in November 2002.

On November 14, 2002, the Constar Defendants filed with the Securities and Exchange Commission ("SEC") the Registration Statement for the issuance of 10.5 million shares of Constar common stock.  However, lead plaintiffs allege that the Registration Statement was false and misleading in many material respects.  For example, lead plaintiffs state that the Registration Statement portrayed Constar as a highly competitive, growing company when, in fact, the opposite was true.  It is further alleged that the Registration Statement falsely represented that Constar utilized "state of the art" equipment, and that its "machinery had been continuously maintained and upgraded."

Lead plaintiffs also aver that the Registration Statement incorporated materially false and misleading financial statements, overstating Constar's "goodwill" by at least $183 million, which in turn violated generally accepted accounting principles ("GAAP") and Constar's own publicly-stated accounting policies.  In addition, lead plaintiffs allege that the Registration Statement failed to properly disclose the nature and consequences of Crown transferring a substantial amount of its debt to Constar as part of the IPO, whereby Constar issued a $350 million note to Crown as a "dividend," despite having insufficient retained earnings to declare such a dividend.

According to lead plaintiffs, the true state of Constar's financial problems began to come to light at the end of July 2003 when Constar alerted the market of its disappointing financial results for the second quarter of 2003.  Lead plaintiffs further aver that on a conference call with

analysts immediately before the market opened on July 30, 2003, defendants revealed that the reported loss was due to the loss of significant customers and margin erosion caused by the absence of special technology needed to produce custom PET products.

Lead plaintiffs allege that in August 2003, Constar announced that it would take a material write-off to reflect the impairment of goodwill, which resulted from the loss of key personnel, obsolete equipment, loss of PET business, and loss of its leadership position within the PET industry.  As this information was disclosed, lead plaintiffs claim that Constar's shares declined sharply in value, thereby causing substantial damages to the public investors who purchased Constar stock pursuant or traceable to the Registration Statement.

Lead plaintiffs further aver that after this "partial disclosure," on August 14, 2003 the Company belatedly admitted that its financial position was not as previously represented because it had failed to recognize long-overdue charges for impairment of goodwill.  The Company subsequently acknowledged that it would take a $183 million charge to write-off its impaired goodwill.


## 2.   DISCUSSION

"The decision whether or not to certify a class lies within the court's broad discretion exercised pursuant to Rule 23 of the Federal Rules of Civil Procedure."  In re Vicuron Pharmaceuticals, Inc. Sec. Litig., 233 F.R.D. 421, 425 (E.D. Pa. 2006) (citing Battle v. Pennsylvania, 629 F.2d 269 (3d Cir. 1980), cert. denied, 452 U.S. 968 (1981)); see also Gunnells v. Healthplan Servs., Inc., 348 F.3d 417 (4th Cir. 2003), cert. denied, 542 U.S. 9115 (2004).  To obtain certification, plaintiffs must satisfy the four requirements of Rule 23(a), together with those of Rule23(b)(1), (2), or (3).  Vicuron Pharm., 233 F.R.D. at 425 (citing In re Warfarin Sodium Antitrust Litig.,

391 F.3d 516, 527 (3d Cir. 2004)); <u>see</u> <u>Neuberger v. Shapiro</u>, 1998 WL 826980, at *1 (E.D. Pa.

Nov. 25, 1998) (citing <u>Amchem Prods., Inc. v. Windsor</u>, 117 S. Ct. 2231, 2245 (1979)) (Ludwig,

J.).

> Rule 23(a) provides:

>> One or more members of a class may sue or be sued as
>> representative parties on behalf of all only if (1) the class is so
>> numerous that joinder of all members is impracticable, (2) there are
>> questions of law and fact common to the class, (3) the claims or
>> defenses of the representative parties are typical of the claims or
>> defenses of the class, and (4) the representative parties will fairly
>> and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); <u>see</u> <u>Neuberger</u>, 1998 WL 826980, at *1 n.3.  These four requirements are

also referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy (of

representation).  <u>See</u> <u>Vicuron Pharm.</u>, 233 F.R.D. at 425; <u>Neuberger</u>, 1998 WL 826980, at *1-3.

Furthermore, under Rule 23(b)(3), on which plaintiff's rely, two requirements must be

met.  <u>Vicuron Pharm.</u>, 233 F.R.D. at 425.  First, common questions must "predominate over any

questions affecting only individual members."  <u>Id.</u> (quoting Fed. R. Civ. P. 23(b)(3)); <u>see</u>

<u>Neuberger</u>, 1998 WL 826980, at *4 n.11.  Second, class resolution must be "superior to other

available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P.

23(b)(3); <u>Vicuron Pharm.</u>, 233 F.R.D. at 425 (citing <u>Warfarin Sodium Antitrust</u>, 391 F.3d at

527); <u>Neuberger</u>, 1998 WL 826980, at *4 n.11.

In this context, the Court of Appeals for the Third Circuit views the class action device as

a "**particularly appropriate and desirable** means to resolve claims **based on the securities**

**laws**, since the effectiveness of the securities laws may depend in large measure on the

application of the action device."  <u>Vicuron Pharm.</u>, 233 F.R.D. at 425 (quoting <u>Yang v. Odom</u>,

392 F.3d 97, 109 (3d Cir. 2004), <u>cert.</u> <u>denied</u>, 544 U.S. 1048 (2005)) (internal citation omitted)

(emphasis added); see In re Regal Communications Corp. Sec. Litig., 1995 WL 550454, at *3

(E.D. Pa. Sep. 14, 1995) (citing Eisenberg v. Gagvon, 766 F.2d 770, 785 (3d Cir.), cert. denied,

474 U.S. 946 (1985)).  The Third Circuit "has adopted a **liberal construction** of Rule 23 when

considering shareholder suits, declaring that 'the interest of justice require that in a doubtful case

. . . any error if there is to be one, should be committed **in favor of allowing a class action.**'"

Regal Communications, 1995 WL 550454, at *3 (quoting Eisenberg, 766 F.2d at 785) (emphasis

added).  Nevertheless, since courts may approve class actions only after a rigorous analysis and

findings that the class satisfies all the requirements of Rule 23, it is necessary to address each of

the four elements of Rule 23(a) and the elements of Rule 23(b)(3) in this case.  See Regal

Communications, 1995 WL 550454, at *3 (citing In re GM Corp. Pick-Up Truck Fuel Tank

Prods. Liab. Litig., 55 F.3d 768, 800 (3d Cir.), cert. denied, 516 U.S. 824 (1995)).


### (A)    Rule 23(a) Requirements

#### 1.    Numerosity

To satisfy the numerosity requirement, a class must be "so numerous that joinder of all

members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticality does not mean

impossibility," and "[i]t is proper for the court to make 'common sense assumptions' to support a

finding of numerosity."  Regal Communications, 1995 WL 550454, at *4.  The Third Circuit has

held that "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but

generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40,

the first prong of Rule 23(a) has been met."  Vicuron Pharm., 233 F.R.D. at 425 (quoting Stewart

v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001), cert. denied, 536 U.S. 958 (2002)); see also

Neuberger, 1998 WL 826980, at *1 (citing Deutschman v. Beneficial Corp., 132 F.R.D. 359, 371

(D. Del. 1990)).  Furthermore, it has been observed that "[i]n securities fraud class actions, courts often find the numerosity requirement easily met."  See Regal Communications, 1995 WL 550454, at *3 (citing Herbert Newberg and Alba Conte, 4 Newberg on Class Actions § 22.09).

Lead plaintiffs aver that during the class period, Constar was traded nationally and the Company had approximately 10.5 million shares of Constar common stock issued pursuant to the IPO.  Thus, plaintiffs allege that hundreds, if not thousands purchased Constar and that they are geographically dispersed.  "At a minimum, it is clear that the proposed class is very large and that its members could not be realistically joined in one action."  See Vicuron Pharm., 233 F.R.D. at 426; see also Neuberger, 1998 WL 826980, at *1 (citing Deutschman, 132 F.R.D. at 371) ("Plaintiffs need not allege the precise number of putative class members in order to establish numerosity."); Regal Communications, 1995 WL 550454, at *4.  Therefore, plaintiffs have satisfied the numerosity requirement.

### 2.   Commonality

To satisfy the commonality requirement, putative class members need not present identical claims and facts.  See Johnston v. HBO Film Mgt., Inc., 265 F.3d 178, 184 (3d Cir. 2001); Hassine v. Jeffes, 846 F.2d 169, 177 (3d Cir. 1988); Neuberger, 1998 WL 826980, at *1. Rather, parties moving for class certification must show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2); Vicuron Pharm., 233 F.R.D. at 426.  In other words, the named plaintiffs need only "share **at least one question of fact or law** with the grievances of the prospective class."  Stewart, 275 F.3d at 226-27 (emphasis added); see Baby

Neal v. Casey, 43 F.3d 48, 57 (3d Cir. 1994); Vicuron Pharm., 233 F.R.D. at 426; Neuberger,

1998 WL 826980, at *1.

Here, plaintiffs allegedly have suffered damages from the same course of conduct on the

part of defendants and share common factual questions.  See, e.g., Vicuron Pharm., 233 F.R.D. at

426.  For example, plaintiffs' allegation that the Registration Statement issued in connection with

the IPO contained untrue statements of material facts or omitted to state material facts required to

be stated therein or necessary to make the statements therein not misleading is the quintessential

common question in a § 11 securities class action.  See In re Merk & Co. Sec. Litig., 432 F.3d

261, 273 (3d Cir. 2005) (quoting 15 U.S.C. § 77k(a)); In re Adams Golf, Inc. Sec. Litig., 381

F.3d 267, 273 (3d Cir. 2004) (citing Herman & MacLean, 459 U.S. at 382).  Since there are

clearly "questions of law or fact common to the class," see Fed. R. Civ. P. 23(a)(2); Vicuron

Pharm., 233 F.R.D. at 426, the commonality requirements is satisfied.


### 3.    Typicality

While similar to commonality, "[t]he typicality inquiry is intended to assess whether the

action can be efficiently maintained as a class and whether the named plaintiffs have incentives

that align with those of the absent class members. . . ."  Neuberger, 1998 WL 826980, at *2

(citing Baby Neal, 43 F.3d at 57); see Regal Communications, 1995 WL 550454, at *4.  To

satisfy the typicality requirement, a party must show that "the claims or defenses of the

representative parties are typical of the claims or defenses of the class."  See Fed. R. Civ. P.

23(a)(3); Vicuron Pharm., 233 F.R.D. at 426 (quoting Rule 23(a)(3)).  It has been observed that

"[t]his is not generally a difficult obstacle."  See Regal Communications, 1995 WL 550454, at

*4.

"The focus is on the **defendants'** behavior, not that of the plaintiffs, and the typicality requirement **will be met** if the claims **arise from the same event or course of conduct** and [are] **based on the same legal theory.**"  Regal Communications, 1995 WL 550454, at *4 (citing Baby Neal, 43 F.3d at 58) (emphasis added); see also Vicuron Pharm., 233 F.R.D. at 426; In re Scott Paper Sec. Litig., 142 F.R.D. 611, 615 (E.D. Pa. 1992).  Thus, "[f]actual differences will not otherwise render a claim atypical."  See Vicuron Pharm., 233 F.R.D. at 426 (quoting Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992)) (emphasis added).  "Plaintiffs' allegations that the defendants participated in a series of misstatements and omissions in violation of the securities laws meet this requirement."  See Regal Communications, 1995 WL 550454, at *4; see also Vicuron Pharm., 233 F.R.D. at 426; Neuberger, 1998 WL 826980, at *2.

Here, citing Shapiro v. UJB Financial Corp., 964 F.2d 272 (3d Cir.), cert. denied, 506 U.S. 934 (1992), defendants contend that, while § 11 provides a cause of action to purchasers of securities issued pursuant to offering documents that contain material misstatements or omissions, "[u]nder the law of [the Third] Circuit, . . . the purchasers must have bought the securities **at** the initial offering, and not in a secondary market" to have standing to bring § 11 claims.[6]  See Defs.' Resp. at 18-19.  Defendants continue that since "it is undisputed that the proposed representatives bought their shares of Constar in July 2003, long **after** Constar's IPO in November 2002," the proposed representatives "have no **standing** . . . and their claims are atypical."  Id. at 22 (emphasis added).

Even assuming for present purposes that defendants "standing" argument is relevant to whether lead plaintiffs' "claims or defenses . . . are **typical** of the claims or defenses of the class," see Fed. R. Civ. P. 23(a)(3) (emphasis added), plaintiffs satisfy the typicality requirement in this case.  Section 11(a) of the Securities Act provides that where a registration statement

containing material misstatements or omissions accompanies a Securities Exchange Commission ("SEC") securities filing, "***any* person acquiring such security**" may bring an action for losses caused by the defect.  <u>See</u> 15 U.S.C. § 77k(a) (emphasis added); <u>see also</u> <u>DeMaria v. Andersen</u>, 318 F.3d 170, 176 (2d Cir. 2003); <u>Lee v. Ernst & Young, LLP</u>, 294 F.3d 969, 976 (8th Cir. 2002); <u>In re Adams Golf, Inc. Sec. Litig.</u>, 176 F. Supp.2d 216, 227 (D. Del. 2001), <u>aff'd in part, rev'd in part on other grounds</u>, 381 F.3d 267 (3d Cir. 2004).

Thus, **unlike § 12(a)(2)** of the 1933 Act, there is no privity requirement and there is no language limiting the claims to those investors who purchase their shares **in** an initial public offering.  <u>See</u> <u>Lee</u>, 294 F.3d at 976; <u>Adams Golf</u>, 176 F. Supp.2d at 227.  Instead, "the natural reading of 'any person acquiring such security' is that the plaintiff must have purchased, **at some point**, a security issued under the registration statement at issue." <u>Id.</u> (emphasis added).  Indeed, as pointed out by the Second, Eighth, Tenth and Ninth Circuits, this reading of the scope of § 11 is supported by several other provisions of the section.  <u>See</u> <u>DeMaria</u>, 318 F.3d at 176; <u>Lee</u>, 294 F.3d at 977; <u>Joseph v. Wiles</u>, 223 F.3d 1155, 1158-61 (10th Cir. 2000); <u>Hertzberg v. Dignity Partners, Inc.</u>, 191 F.3d 1076, 1079-82 (9th Cir. 1999); <u>Adams Golf</u>, 176 F. Supp.2d at 227.

In addition, this interpretation is consistent with the legislative intent of the 1933 Act, which was to regulate the initial distribution of securities.  <u>Id.</u>  Specifically, "[w]here plaintiffs can ***trace* their shares to the initial offering**, the alleged misrepresentation that violates the 1933 Act took place in the public offering, even though the shares were purchased on the open market." <u>Id.</u> (emphasis added); <u>see</u> <u>Joseph</u>, 223 F.3d at 1159 (citing <u>Columbia Gen. Inv. Corp.</u>, 265 F.2d at 562).

In <u>Adams Golf</u>, the defendants argued that plaintiffs lacked standing in that "§ 11 relief is only available to those individuals who purchase their shares directly through the IPO subject to

the registration statement at issue." <u>Adams Golf</u>, 176 F. Supp.2d at 225.  The District Court

initially pointed out that "although <u>Ballay</u>, and arguably <u>Gustafson</u>, **both decisions that**

**considered** *only § 12(2)*, control this court's interpretation of standing *under § 12(a)(2)*, **neither**

**holding directly controls the court's interpretation of** *the standing requirements of § 11*." <u>Id.</u>

at 226 (emphasis added); <u>see</u> <u>DeMaria</u>, 318 F.3d at 177 ("Defendant's reliance on <u>Gustafson</u> is

misplaced.").

The Court further observed that "[s]ince <u>Gustafson</u>, each Circuit Court that has addressed

the issue of whether the aftermarket purchasers may proceed **under § 11** has determined that

*they may*, so long as the securities were **traceable** to an offering that was covered by the

allegedly false registration statement." <u>Adams Golf</u>, 176 F. Supp.2d at 226 (emphasis added);

<u>see, e.g.,</u> <u>DeMaria</u>, 318 F.3d at 176 (Second Circuit); <u>Lee</u>, 294 F.3d at 977 (Eighth Circuit);

<u>Joseph</u>, 223 F.3d at 1158-61(Tenth Circuit); <u>Hertzberg</u>, 191 F.3d at 1079-82 (Ninth Circuit); <u>see</u>

<u>also</u> Brian Murray, <u>Aftermarket Purchaser Standing Under § 11 of the Secutities Act of 1933</u>, 73

St. John's L. Rev. 633, 650 ("the more recent and more well-reasoned decisions allow

aftermarket purchasers standing to sue under section 11"); Vincent R. Capucci, <u>Misreading</u>

*<u>Gustafson</u>* <u>Could Eliminate Liability Under Section 11</u>, 218 N.Y.J.L. 1 (Sep. 22, 1997).  Prior to

<u>Gustafson</u>, the First and Second Circuits had indicated a similar view.  <u>Lee</u>, 294 F.3d at 975-76;

<u>see</u> <u>Versyss Inc. v. Coopers & Lybrand</u>, 982 F.2d 653, 657-58 (1ˢᵗ Cir. 1992), <u>cert.</u> <u>denied</u>, 508

U.S. 974 (1993); <u>Barnes v. Osofsky</u>, 373 F.2d 269 (2d Cir. 1967).  As defendants concede in

their brief, <u>see</u> Defs.' Resp. at 21, "finding the reasoning that supports [such] decisions . . . to be

persuasive," the <u>Adams Golf</u> Court explicitly "adopt[ed] the view that aftermarket purchasers

may proceed under § 11 so long as they can **trace** the purchase of their shares to a public offering

that is covered by the offending registration statement."[7]  Adams Golf, 176 F. Supp.2d at 226-27 (emphasis added).

Defendants contend that the Third Circuit's holding in Shapiro requires that the Court find that plaintiffs here have no standing and that the typicality requirement of Rule 23(a)(4) is not satisfied.  See Defs.' Resp. at 19; Defs.' Reply at 24-26.  Defendants state: "[T]he Third Circuit was quite clear in Shapiro about its holding: 'If plaintiffs' shares were purchased in the secondary market, they would not be linked to a registration statement, and the § 11 claim would fail.'"[8]  See Defs.' Reply at 25-26.

However, Shapiro is distinguishable from this case.  See Adams Golf, 176 F. Supp.2d at 228 ("The confusion about the meaning of Shapiro is due to that cases's **peculiar factual context**.") (emphasis added).  In Shapiro the plaintiffs alleged that the defendant's Dividend Reinvestment and Stock Purchase Plan ("DRISP") and the accompanying prospectus and registration statement were false and misleading, and that plaintiffs purchased defendant's stock "pursuant to" all three documents.  See Shapiro, 964 F.2d at 285.  Under the DRISP, shareholders reinvested their dividends by purchasing additional shares.  Id.

Significantly, the Shapiro Court pointed out "**[s]ome** of these new shares were authorized but *previously unissued* **treasury stock**, but **others** (i.e. previously issued shares) were purchased by the defendant corporation in the secondary market."  Id. at 285-86 (emphasis and parenthesis added).  As the Adams Golf Court observed:

> The court in Shapiro held that if the DIRSP shares could be traced to the (previously unissued) treasury stock, they would properly allege their § 11 claim.  However, . . . the court (in Shapiro) noted that if plaintiffs were only able to trace their shares to the secondary market shares, **which *in this case* were shares *already issued on the date of the misleading registration statement*, they could not satisfy the tracing requirement and therefore could not

bring their § 11 claim.

<u>Adams Golf</u>, 176 F. Supp.2d at 228 (italics and parenthesis added); <u>see</u> <u>Shapiro</u>, 964 F.2d at 285-86.

Thus, it should be pointed out that, as with the defendants in <u>Adams Golf</u>, defendants reliance on the holding of <u>Shapiro</u> in this case "is misplaced." <u>Adams Golf</u>, 176 F. Supp.2d at 1160. "<u>Shapiro</u> does not support the proposition that the Third Circuit does not recognize aftermarket purchaser's standing under § 11. Rather, <u>Shapiro</u> is an endorsement of the 'tracing' theory, and has been so recognized by other courts." <u>Adams Golf</u>, 176 F. Supp.2d at 227-2; <u>see</u> <u>Joseph</u>, 223 F.3d at 1160 (citing <u>Shapiro</u> when discussing how requiring that aftermarket purchaser to demonstrate that the ability to trace the purchase back to the offending registration statement satisfies the standing requirements of § 11).

Moreover, the Court in <u>Shapiro</u> did not dismiss the § 11 claim on the ground that it required the plaintiffs to purchase their shares **in** the initial public offering. <u>See</u> <u>Adams Golf</u>, 176 F. Supp.2d at 228. "Rather, the <u>Shapiro</u> Court held that if the plaintiffs could prove that they could **trace** their shares to a false or misleading registration statement, they could recover, even when they did not purchase their shares **in** the initial offering." <u>Id.</u> (emphasis added); <u>see</u> <u>DeMaria</u>, 318 F.3d at 178 (citing <u>Shapiro</u> as consistent with the holding that "aftermarket purchasers may sue under § 11). In contrast to <u>Shapiro</u>, in the present case, plaintiffs do not allege that Constar had issued shares prior to the November 2002 IPO and thus there appears to be no risk that the shares plaintiffs purchased "were shares already issued on the date of the [allegedly] misleading registration statement." <u>See</u> <u>Adams Golf</u>, 176 F. Supp.2d at 228 (emphasis omitted).

In In re Suprema Specialties, Inc. Securities Litigation, 438 F.3d 256 (3d Cir. 2006), the

Third Circuit Court of Appeals vacated the District Court's dismissal of §§ 11 and 12(a)(2)

claims.  The Court of Appeals found that the District Court improperly determined that the

claims "sound[ed] in fraud" and therefore that the claims should not have been dismissed for

failing to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil

Procedure.[9]  Id. at 274.

The Court also addressed the defendants' "argu[ment] in the alternative that plaintiffs'

Section 11 and Section 12(a)(2) claims should have been dismissed for **lack of standing** because

plaintiffs did not allege that their 'purchases of [defendant's] stock were part of or, in the case of

§ 11, were directly traceable to, public offerings under the challenged registration statements.'"

Id. at 274 n.7 (quoting Def.'s Br. at 14) (emphasis added).

Similarly to this case, the defendants in Suprema Specialties argued that standing for § 11

and § 12(a)(2) claims "applies only to purchasers **in** initial stock offerings, **not to open or**

**secondary market purchases**."  Suprema Specialties, 438 F.3d at 274 n.7 (quoting Def.'s Br. at

24) (emphasis added).  The plaintiffs' Complaint in Suprema Specialties alleged that some of the

plaintiffs' stock was purchased "in" the challenged offering and some of the stock **subsequently**

purchased was "**traceable to**" the shares issued in the offering.  See Suprema Specialties, 438

F.3d at 274 n.7 (emphasis added).

Citing DeMaria v. Andersen, 318 F.3d at 176, the Court of Appeals confirmed that it

agreed with the District Court's holding that the plaintiffs sufficiently alleged standing: "We

agree with [the view of the Second Circuit in DeMaria] and hold that plaintiffs' assertions of

purchases 'in' **and 'traceable to**' the [defendant's] stock offerings were sufficient at the pleading

stage."[10]  Suprema Specialties, 438 F.3d at 274 n.7 (emphasis added).  In support, as the Second

Circuit did in <u>DeMaria</u>, the <u>Suprema Specialties</u> Court pointed to the **plain meaning** of § 11 providing that "**any** person acquiring" a security issued pursuant to a materially false registration statement may sue.[11] <u>Id.</u> (quoting 15 U.S.C. § 77i(a) (emphasis added by Third Circuit).

Therefore, consistent with the plain language of § 11 and the legislative intent of the 1933 Act, plaintiffs' assertions of purchases 'in' and 'traceable to' the [defendant's] stock offerings were sufficient" for standing purposes.[12] <u>See Suprema Specialties</u>, 438 F.3d at 274 n.7; <u>DeMaria</u>, 318 F.3d at 178; <u>Lee</u>, 294 F.3d at 977; <u>Joseph</u>, 223 F.3d at 1158-61; <u>Hertzberg</u>, 191 F.3d at 1079-82; <u>Adams Golf</u>, 176 F. Supp.2d at 227.  Further, since plaintiffs' claims arise from the same event or course of conduct and is based on the same legal theory**,**" the typicality requirement is met.  <u>See Regal Communications</u>, 1995 WL 550454, at *4 (citing <u>Baby Neal</u>, 43 F.3d at 58); <u>see also Vicuron Pharm.</u>, 233 F.R.D. at 426; <u>Scott Paper</u>, 142 F.R.D. at 615.

### 4.    Adequacy of Representation

The Court of Appeals for the Third Circuit has stated that the adequacy requirement encompasses two inquiries designed to ensure that the interests of absentees are fully pursued. <u>See Barnes v. American Tobacco Co.</u>, 161 F.3d 127 (3d Cir. 1998), <u>cert. denied</u>, 526 U.S. 1114 (1999); <u>Vicuron Pharm.</u>, 233 F.R.D. at 426 (citing <u>Barnes</u>).  The Court first inquires whether the "named plaintiffs' interests are **sufficiently aligned** with the absentees' and, second, [the Court] assess[es] the qualifications of the counsel who seek to represent the class." <u>In re Community Bank of N. Va.</u>, 418 F.3d 277, 303 (3d Cir. 2005) (internal citation omitted) (emphasis added); <u>Vicuron Pharm.</u>, 233 F.R.D. at 426.

Defendants do not appear to challenge the qualifications of lead plaintiffs' counsel in this case, and as reflected in the resumes submitted, lead counsel and liaison counsel for the class appear well-qualified and highly experienced such that they can continue to adequately conduct

this litigation and represent the interests of the class.  See, e.g., In re DaimlerChrysler AG Sec.

Litig., 216 F.R.D. 291, 300 (D. Del. Oct. 28, 2003).  Indeed, counsel has diligently and actively

engaged in advancing the interests of the class members through this stage in the proceedings,

and they have been found to satisfy the adequacy requirement in other class actions involving

alleged securities law violations.  See, e.g., Vicuron Pharm., 233 F.R.D. at 428 (finding

plaintiff's lead counsel in this case "sufficiently experienced and qualified to conduct this

securities fraud class action" and observing that "[t]he record reveals that [counsel] has

participated in several successful securities fraud class actions in various federal courts

throughout the United States"); see also In re Ravisent Tech., Inc. Sec. Litig., 2005 WL 906361,

at *5 n.7 (E.D. Pa. Apr. 18, 2005) (citing other cases and observing that liaison counsel in this

case is "very experienced in prosecuting class action cases and ha[s] diligently and actively

engaged in advancing the interests of the class members since the inception of th[e] action").

       With regard to the remaining inquiry of the adequacy requirement, defendants argue that

lead plaintiffs "have not taken the necessary 'active role in and control [of] the litigation [in order

to] protect the interests of absentees.'"  See Defs.' Resp. at 11 (quoting Berger v. Compaq Comp.

Corp., 257 F.3d 475, 482 (5th Cir. 2001) (internal quotations marks omitted)).  Defendants

essentially argue that lead plaintiffs have given discretion to counsel and lack knowledge about

many of the basic matters in this case.  Id. at 10-17.  In addition, pointing to certain discrepancies

in the deposition testimony, defendants challenge Redstone's "credibility," and they also

speculate that he might have improper motives in that he apparently attempted to work for

Constar prior to this lawsuit.  Id. at 11-12.

       "The Third Circuit [has] recognized that it is class counsel not the named plaintiffs, who

direct and manage the litigation."  Regal Communications, 1995 WL 550454, at *6; see Lewis v.

Curtis, 671 F.2d 779 (3d Cir.) ("[t]he adequacy-of-representation test is not concerned whether

plaintiff personally derived the information . . . or whether he will personally be able to assist his

counsel"), cert. denied, 459 U.S. 880 (1982); Georgine v. Amchem Prods., Inc., 157 F.R.D. 246,

317 (E.D. Pa. 1994) ("It is not a requirement that representative plaintiffs have specific

knowledge of the claims and issue . . . or that they play a personal role in the direction and

management of the action").  While it is true that the named plaintiffs' deposition testimony

reflected a lack of knowledge as to aspects of the case, "i[t is unrealistic to require a class action

representative to have an in-depth grasp of the legal theories of recovery behind his or her claim."

In re Cephalon Sec. Litig., 1998 WL 470160, at *3 (E.D. Pa. 1998) (quoting Barnes, 176 F.R.D.

at 485-86); see Neuberger, 1998 WL 826980, at *3.  Moreover, "in the context of complex

securities litigation, attacks on the adequacy of the class representative based on the

representative's ignorance or credibility are rarely appropriate."  See id. (citing In re Frontier Ins.

Grp., Inc. Sec. Litig., 172 F.R.D. 31, 46 (E.D. N.Y. 1997)).

    As has been observed by one District Court, "plaintiffs in [the Third] Circuit are held to a

**very minimal requirement** of knowledge about the litigation and the facts upon which it is

based."  DaimlerChrysler, 216 F.R.D. at 300 (emphasis added).  Here, a review of the proffered

deposition testimony indicates that named plaintiffs, Bhandari and Redstone, appear to have

sufficient understanding and knowledge of the basic facts, and there is no apparent conflict

between lead plaintiffs and the interest of the rest of the class members.  See, e.g., id. at 300;

Neuberger, 1998 WL 826980, at *4; see also Rosen v. Fidelity Fixed Income Trust, 169 F.R.D.

295, 300 (E.D. Pa. Nov. 28, 1995) (citing 1 Herbert B. Newberg, Newberg on Class Actions §

3.25, at 1-135-36 & n.357 (3rd ed. 1992) ("speculative conflict should be disregarded at the class

certification stage")).  Furthermore, they sought out counsel who have substantial prior

experience in class action securities litigation, and who have demonstrated competence in this case.  See, e.g., Neuberger, 1998 WL 826980, at *4; see also Regal Communications, 1995 WL 550454, at *6 (citing GM Corp., 55 F.3d at 798) (noting that the adequate representation inquiry is "whether the lawyers have sufficient resources and skills to prosecute the action")).  Plaintiffs have satisfied the adequacy requirement and the four requirements of Rule 23(a).


###### (B)     Rule 23(b)(3) Requirements

As explained above, to certify the proposed class, the Court must determine not only that the four threshold requirements of Rule 23(a) are satisfied but also that the action meets the requirements of one of the three categories of class actions in Rule 23(b).  See Ravisent Tech., 2005 WL 906361, at *5 (citing Warfarin, 391 F.3d at 527)).  Here, plaintiffs rely on Rule 23(b)(3).

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to the members of the class **predominate** over any question affecting only individual members, and that a class action is **superior** to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3) (emphasis added); see Ravisent Tech., 2005 WL 906361, at *5; Vicuron Pharm., 233 F.R.D. at 428.  For the reasons explained below, these elements have been met in this case.


###### 1.     Predominance of Common Issues

"The predominance requirement 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  Ravisent Tech., 2005 WL 906361, at *5 (quoting Amchem Prods, 521 U.S. at 623); Neuberger, 1998 WL 826980, at *4.  This is "a test readily

met" in securities cases.  See Ravisent Tech., 2005 WL 906361, at *5 (quoting Amchem Prods.

521 U.S. at 625).

In this case, common questions as to the **existence and materiality of alleged**

**misrepresentations and omissions in the offering materials** favor certification and

**predominate** over issues that may be particular to individual class members.  See, e.g.

DaimlerChrysler, 216 F.R.D. at 300; Neuberger, 1998 WL 826980, at *4; Rosen, 169 F.R.D. at

301 ("The individual questions that may be raised by this litigation . . . do not predominate over

the **central issue** in the case, namely, **whether the registration statements contained material**

**misstatements or omissions**.") (emphasis added).  All claims arise out of the same conduct -

defendants' alleged omissions or misstatements in connection with the Registration Statement.

See Ravisent Tech., 2005 WL 906361, at *5.  If tried separately, each plaintiff would be required

to establish the same omissions or misrepresentations to prove liability.  See id.; see also Vicuron

Pharm., 233 F.R.D. at 428 (finding the predominance requirement "easily satisfied," court

observed that "common to class members are the crucial allegations that [the defendant

corporation] made material misrepresentations . . . and that those statements artificially inflated

the value of the corporation's stock"); Lerch v. Citizens First Bancorp., Inc., 144 F.R.D. 247, 252

(D. N.J. 1992) (concluding predominance was met because all class members sought

determination that defendants misrepresented and omitted material facts in violation of federal

securities law).

In support of their contention that "individual questions of fact will predominate over

common ones," see Defs.' Resp. at 23, defendants argue that "[a]bsent an efficient market,[9]

plaintiffs' claims will require an individualized, case-by-case treatment of materiality, injury, and

the affirmative defense of loss causation," id. at 25 (footnote added).  Defendants argue that

"because the plaintiffs have relied upon the lack of an efficient market, individual questions of fact will predominate over common ones, and plaintiffs have therefore failed to meet this demanding test." Id. at 24 (emphasis added).

Initially, it is noted that in the context of defendants' previous motion for judgment on the pleadings, lead plaintiffs argued that the controlling Complaint in this case did not **allege** an efficient market, and that plaintiffs were not **required** to make such an allegation to plead a proper claim under § 11.[10]  As plaintiffs state in their reply brief, "[t]o put it simply, the Complaint alleges **nothing** concerning the efficiency **or** inefficiency of the market for Constar stock**.**" See Pl.'s Reply at 17 (emphasis added).

In any event, whether or not the relevant market was efficient, plaintiffs satisfy the predominance requirement of Rule 23(b).  Defendants contend that plaintiffs' failure to allege an efficient market raises issues, including damages and the affirmative defense of loss causation,[11] which will "require an individualized, case-by-case treatment." See Defs.' Resp. at 25 (footnote added).  However, "[i]n determining whether common questions of law and fact predominate, the focus of the inquiry is directed primarily toward the issue of liability." See Regal Communications, 1995 WL 550454, at *6 (citing Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977), cert. denied, 434 U.S. 1086 (1978)) (emphasis added).  Here, common questions as to the existence and materiality of alleged misrepresentations and omissions in the Registration Statement predominate, see, e.g, DaimlerChrysler, 216 F.R.D. at 300; Neuberger, 1998 WL 826980, at *4; Rosen, 169 F.R.D. at 301, and all claims arise out of defendants' alleged omissions and misstatements.  See Ravisent Tech., 2005 WL 906361, at *5; see also Herman & MacLean v. Huddleston, 459 U.S. 375, 382 (1983) ("If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or

omission to establish his prima facie case. **Liability against the issuer of a security is virtually absolute**, even for innocent misstatements. . . . Section 11 places a relatively minimal burden on a plaintiff.") (emphasis added).

Nevertheless, defendants argue that "[i]n an inefficient market [the] 'given set of facts' differs from investor to investor." See Defs.' Resp. at 27. Defendants state that "in an efficient market, the market absorbs all information," and "[t]herefore, each investor '**knows**' precisely the same information as each other investor **knows**," as opposed to investors in an inefficient market. Id. at 27-28 (emphasis added); see also Defs.' Resp. at 28 ("The point, in short, is that in the absence of an efficient market each investor **possesses different information** and there is no effective, aggregate, classwide way to determine materiality. It necessarily would be an investor-by-investor inquiry.") (emphasis added).

"The question of materiality, it is universally agreed, is an **objective** one, involving the significance of an omitted or misrepresented fact to a **reasonable** investor."[12] TSC Indus. v. Northway, Inc., 426 U.S. 438, 445 (1976); see Johnson, 355 F. Supp.2d at 1345 (citing TSC Indus., 426 U.S. at 445) (in action brought pursuant to §§ 11 and 12 of the 1933 Act, Court observed that "the question of materiality is an **objective** inquiry that hinges upon the significance of an omitted or misrepresented fact to a **reasonable** investor") (emphasis added). Indeed, defendants acknowledge that the applicable "**reasonable** investor test is an **objective** one." See Defs.' Resp. at 27 (citing TSC Indus.) (emphasis added).

Therefore, what each individual investor **actually knew**, is not determinative in a § 11 securities class action in that the materiality question is **objective**, see TSC Indus., 426 U.S. at 445; Johnson, 355 F. Supp.2d at 1345 (citing TSC Indus., 426 U.S. at 445). Defendants observe that "[s]imilar reasoning [regarding the significance of what each plaintiff knew] leads court[s] to

routinely deny class certification in **[§] 10(b) cases under the 1934 Act**," and that "[i]n **Section 10(b)** cases . . ., courts presume **reliance** when a market is efficient." See Defs.' Resp. at 28-29 (emphasis added).  Defendants further argue that "[w]hile *reliance* **is not an element here**, there is no reason that the same principles do not apply to materiality analysis." Id. at 29.

The Third Circuit in Adams Golf, explained the "stark" differences between § 11 and § 10(b) cases:

> There are **substantial differences** between the elements a plaintiff must establish under § 10 . . . of the Security Exchange Act of 1934 and under §§ 11 and 12(2) of the Securities Act of 1933. Under the former, the plaintiffs must plead not only that the defendants made material omissions and/or misrepresentations, **but also** that they reasonably **relied** on them and that the defendants acted with knowledge or recklessness.  In contrast, **§§ 11 and 12(2) impose no such requirements.**

Adams Golf, 381 F.3d at 274 n.7 (emphasis added); see also id. at 273 n.5 ("The requirements under section 11 stand in **stark contrast** to those of the [the 1934 Act], which include a showing of reasonable reliance and scienter.").[13]  The significance of whether the market is efficient in a **§ 10(b) case** is that where a purchaser sufficiently alleges that stock was traded on an "efficient market," the purchaser may invoke the "fraud-on-the-market theory"[14] **and is not required to allege or prove *individual reliance*** on particular misrepresentations or omissions.  F.W. Hayes v. Gross, 982 F.2d 104, 106-07 (3d Cir. 1992).  Thus, plaintiffs may need to allege and prove that a market is "efficient" in a § 10(b) case in order to avoid the requirement of proving individual **reliance**.  See, e.g., id. at 107.  In a § 11 case, however, reliance is not an issue, and the § 10(b) cases on which defendants rely are inapplicable.

In the present case, all claims arise out of defendants' alleged omissions or misstatements in connection with the Registration Statement, and common questions as to the existence and

materiality of such misrepresentations and omissions (the central issue in the case) predominate

over issues that may be particular to individual class members.[15]   See, e.g. DaimlerChrysler, 216

F.R.D. at 300; Neuberger, 1998 WL 826980, at *4; Rosen, 169 F.R.D. at 301; see also Ravisent

Tech., 2005 WL 906361, at *5; Vicuron Pharm., 233 F.R.D. at 428; Lerch, 144 F.R.D. at 252.

Therefore, plaintiffs satisfy the predominance requirement of Rule 23(b)(3).


### 2.   Superiority of the Class Action

In addition to common questions of law and fact, Rule 23(b)(3) requires the class action

to be superior to other available methods for litigating the claims.   See Fed. R. Civ. P. 23(b)(3);

see Ravisent Tech., 2005 WL 906361, at *5; Vicuron Pharm., 233 F.R.D. at 428.   The Third

Circuit has noted that this requirement "asks the court to balance, in terms of fairness and

efficiency, the merits of a class action against those of alternative available methods of

adjudication."   Vicuron Pharm., 233 F.R.D. at 428 (quoting Warfarin, 391 F.3d at 533-34).   Rule

23 lists some of the matters pertinent to the analysis:

> (A) the interest of members of the class in individually controlling
> the prosecution or defense of separate actions; (B) the extent and
> nature of any litigation concerning the controversy already
> commenced by or against members of the class; (C) the desirability
> or undesirability of concentrating the litigation of the claims in the
> particular forum; (D) the difficulties likely to be encountered in the
> management of a class action.

Fed. R. Civ. P. 23(b)(3); see Vicuron Pharm., 233 F.R.D. at 428.

In this case, a review of the record within the framework provided by the rule indicates

that the proposed class meets the superiority standard.   Among other things, a class action would

avoid redundant litigation, and joinder of all class member would be impracticable.   See Vicuron

Pharm., 233 F.R.D. at 428; Rosen, 169 F.R.D. at 301; Regal Communications, 1995 WL 550454,

at *7.  Furthermore, the Third Circuit has observed that "[c]lass actions are a particularly appropriate and desirable means to resolve claims based on securities laws 'since the effectiveness of those laws may depend in large measure on the application of the class action device.'"  <u>See</u> <u>Neuberger</u>, 1998 WL 826980, at *4 (quoting <u>Eisenberg v. Gagnon</u>, 766 F.2d 770, 785 (3d Cir.) (citations omitted), <u>cert.</u> <u>denied</u>, 474 U.S. 946 (1985)).  Here, "a large number of individuals [allegedly] have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf."  <u>See</u> <u>Rosen</u>, 169 F.R.D. at 301 (quoting <u>Regal Communications</u>, 1995 WL 550454, at *7); <u>Neuberger</u>, 1998 WL 826980, at *4.  Therefore, the class action device is superior to available alternative avenues of adjudication for resolving the dispute.

Since plaintiffs have satisfied the requirements of Rules 23(a) and 23(b)(3), their motion is granted.  Accordingly, an Order consistent with this Report follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re CONSTAR INT'L INC. SECURITIES       :      Master File No. 03-5020
LITIGATION                                :
                                          :
This Document Relates To:                 :
ALL ACTIONS                               :      Class Action

**P R O P O S E D   O R D E R**

AND NOW, this    7th    day of May, 2007, upon consideration of the Motion of Lead

Plaintiffs, Ameesh Bhandari and Randolph Redstone, for Class Certification, and defendants'

opposition thereto, and following oral argument, for the reasons provided in the accompanying

Report, it is hereby ORDERED that:

1.   Lead Plaintiffs' Motion FOR Class Certification is GRANTED;

2.   This action shall be certified as a class action.  The plaintiffs' class shall include:

> All purchasers of the securities of Constar International, Inc.
> ("Constar" or the "Company") issued pursuant to or traceable to
> the Company's Registration Statement/Prospectus for Constar's
> November 14, 2002 initial public offering seeking to pursue
> remedies under the Securities Act of 1933;

3.     Lead Plaintiffs, Ameesh Bhandari and Randolph Redstone, are appointed

Class Representatives; and

4.     Lerach Coughlin Stoia Geller Rudman & Robbins LLP is appointed Lead Class

Counsel,  and the Law Offices of Bernard M. Gross, P.C. is appointed Liaison Class Counsel.



        /s/ Diane M. Welsh
        DIANE M. WELSH
        SPECIAL MASTER